Good morning. Welcome to the United States Court of Appeals for the Sixth Circuit. If you represent the appellate, even if you've already told the clerk how much time you want to reserve in rebuttal, if you'd repeat it and let us know when you begin that we'd appreciate it, we'd appreciate it. Also, I just want to let everybody know this is a very packed day for the members of the court. We have five arguments this morning, and of course then the judges conference immediately after the arguments. And then we have en banc hearings again at beginning at 1.30. And so in order to make sure that we have adequate time to conference after the arguments and that they have time to prepare the courtroom for this afternoon's en banc, we're just going to have to hold everybody. So if you're used to a little bit of slippage, please know that today we're not going to try to, we're going to try to not have slippage. And also just to alert you so you can make sure you get everything said that you feel you must say within the time limits. So with that, the court may call the first case. United States of America v. Isaac Green Jr. Oral Argument Act of 1860, Mr. Saunders, Mr. Bergethon, and Ms. Allyns. Good morning, Your Honors. Ross Bergethon on behalf of Mr. Green and Judge Gibbons, if I could, I'd like to reserve three minutes of rebuttal time. Your Honors, this is a single issue case, but the question it presents is a very important one for this court's Fourth Amendment jurisprudence. And that is, when is a defendant who alleges that police falsified the existence of controlled drug purchases to get a search warrant entitled to an evidentiary hearing under Franks? Now, Mr. Green lived alone, and there's no allegations that he was part of any sort of conspiracy. So there are only three possible sources for definitive facts about the alleged criminal activity in the warrant. There's Mr. Green himself, the alleged confidential informant, and the police. Now, Mr. Green would typically not even be allowed to testify because courts have routinely held that testimony by defendants in these circumstances is self-serving. Even if he was allowed to testify, he'd essentially be tasked with proving a negative, saying, no, this didn't happen. And it would be very difficult for him to do that in other than conclusory terms. He's really not precluded from testifying, is he? You're just saying that's the way courts tend to be. Typically, he would not be precluded from testifying. But even if he did testify, it would be very difficult for him to do anything other than say, no, your honor, this isn't what happened. That leaves the confidential informant who, by the very definition of the term, is confidential and thus unavailable. So that leaves the police. And therein lies the problem for Mr. Green. For Mr. Green to be able to examine the police officer that swore out the affidavit, he has to make a substantial preliminary showing of falsehood under Franks. So how does he do that? In this case, Mr. Green introduced several categories of evidence that drew the truthfulness of the affidavit into question. He drew the court's attention to the point that the from the affidavit in a case called Pusey that appeared before this court almost a decade earlier. That doesn't make it false, does it? It doesn't. That's not a per se black and white rule. But it should, I would submit, draw increased scrutiny from the courts. Because when you're using a form affidavit over and over again, which appears to be the case with the subject of increased constitutional concern, which this court has noted before. So in addition to the affidavit, which because it was used verbatim from another case, contained the sort of inconsistencies and oddities that come with using the same form again, Mr. Green had the testimony of his immediate neighbors who said, no, not only did we not complain about drug activity, which is how the court construed the testimony, but we didn't see anything out of the ordinary happening at his house at all. Does the fact that a form affidavit may have been used go toward establishing the deliberate or intentional nature of the falsehood, the alleged falsehood? Well, again, as I answered Judge Seiler's question, I think that it should raise an initial red flag that the information, if you're going to go about using a form affidavit with very little information changed, then you should get the information that you changed correct. So that should be a backdrop for the court's analysis of the other evidence in this case. And as I was discussing, we have the testimony of neighbors. This is a quiet residential street. This isn't some sort of busy high-rise public housing project, who say, no, I look out on this house and there was no sort of activity like that. The fact that neighbors 1 and 2 didn't see or hear anything doesn't mean that neighbors 3 and 4 didn't. You don't have all the neighbors. Well, that's certainly true, Judge Gilman, but this court has held in United States v. Black that the testimony of a single neighbor about the existence of drug smell, the smell of marijuana in a house, is not sufficient to warrant a Frank's hearing. Well, let's see. This affidavit contained 13 paragraphs. Am I right about that? I'm not sure about the number. I have a – I can – I think page is 192, 193. Yeah. At the end of our opening, of my opening brief, I have a table comparing the two affidavits side by side. My point is, you're not challenging every paragraph of the affidavit as false, were you? No, absolutely. You're not challenging paragraphs 2, 3, and 7? Well, no. I think that's how the district court construed it, and I think that was the root of the error in this case, is overly compartmentalizing Mr. Green's arguments. Because Mr. Green's not arguing, number 1, neighbors didn't complain, or number 2, there was no surveillance, or number 3, I'm 5'10", versus 5'8". Mr. Green's insisted on since the beginning, even when it cut against him, is that there was no – there were no controlled purposes – there were no controlled purchases to begin with. There was no confidential informant. So when we're talking about an affidavit that's almost entirely identical, when we're talking about the neighbor testimony, when we're talking about inconsistencies in the police testing reports that really make no sense in the context of this case, that's where they're going towards. Well, but paragraphs 4, 5, and 6 are the three controlled purchases. That's correct. And they're talking about the week of December 12, 2011, and June 18 of 2012, and they talk about the address 130 Upland, that's the place where the search warrant was for, and that's where they found the drugs and guns and other stuff. I mean, why does that make it false? Well, again, that – the fact that it's duplicated essentially from another affidavit doesn't make it false. It's not duplicated. I may have used the same, but they plug in different dates and different – The terminology is duplicated exactly with the dates and places changed. So, no, Judge Kilman – It's the same circumstance. Right. I mean, they do have a modus operandi with these controlled buys, right? You pat down the confidential informant before you send them in, he comes back and, hey, I got drugs on me, and you pat him down again. I mean, that's just the way these things are done. Certainly. Absolutely. And I think it bears emphasis that we're not arguing that police need to reinvent the wheel here with every affidavit. The use of foreign material is certainly permissible, but it should be done in a way that is not so verbatim from case to case that it allows for the natural differences between cases. The affidavit that was in use in this case, that it looks like from just a search of federal case law, has been used in almost identical form in at least four other cases. Well, that's good police procedure. If this court says this particular warrant and affidavit are illegal, well, then the police will say, well, make one sort of like this to follow this. Make sure you explain how many times you went to the place and what the address is. They just use that as a format, like you use previous cases to proceed as a plaintiff's attorney or however you do it. Absolutely, Judge Seiler. And I think that the existence of case law, in this case the Pusey affidavit, was helpful to police in one sense because, as you say, it illustrates here's what the court's looking for in an affidavit. Although I would emphasize that even as the district court said, this affidavit is, quote, not detailed and it's inartful. If I were grading it, it wouldn't get the highest of marks. I understand your frustration with the affidavit. So this isn't exactly what you would call a model affidavit. And when you get an affidavit that already is, you know, let's say a grade C affidavit that becomes used over and over again with only the names and dates needing to be changed, then that really opens itself to constitutional abuse by the police. But that standing alone, I think if that was my only argument here today, it would be a tough argument that these two are identical. But that's not all we have in this case at all. We do have the testimony of neighbors saying, we look out over this house. Granted, we're not holding a stakeout, but I don't think the law has ever required that. And we've seen nothing out of the ordinary. Does it show in their affidavits that they constantly surveilled the house here where your client lived? No. They watched out the window hour by hour and minute by minute to see who's coming and going? That's correct. But two points on that. Number one, if watching the house 24-7 was the test, then the result in black would have had to have been different. The neighbor in that case certainly wasn't observing the house 24-7. And actually, the district court in that case said, well, I'm not sure how significant the neighbor's testimony is because he didn't testify about what he smelled the night of the raid. And the court said, no, there's no reason to believe that the circumstances were so different that we should discredit his testimony. And number two, the type showing that Mr. Green has to make to proof in the hearing itself would be a preponderance of the evidence. So by implication, to make a preliminary showing that the hearing is necessary, it would be something less than that. So my key argument that I really want to emphasize is that the error in this case is not viewing the evidence of falsehood cumulatively, which courts have said in the past that that's how we have to view things when a defendant is challenging truthfulness. And what the district court did here is it parsed everything finally. It said, well, neighbor's testimony, maybe the neighbors didn't see anything. Well, that only goes to the paragraph in the affidavit about neighbor's complaints. So if we cut that out, we've still got the core of the affidavit. The discrepancies in the amounts. Well, regardless of if the amounts were discrepant and the informant supposedly paid the same amounts of drugs, that doesn't matter because there's still drugs there. Now, all of that's correct from a probable cause standpoint, but that conflates the probable cause analysis with the Franks analysis here, which focuses on truthfulness. Didn't the judge do what United States versus Graham, a Sixth Circuit 2001 decision requires? It says, quote, if the allegations of perjury or reckless disregard is established by the defendant by preponderance of the evidence and with the affidavit's false material set to one side, the affidavit's remaining content is insufficient to establish probable cause, then the search warrant must be voided. And notice it's not like, therefore, even if there's some plausible falsehood allegation, it's not like, oh, that voids the whole search warrant. That means you excise the facts that have some basis for maybe believing or fraudulent, and then look at what's left. That's true, and I see my time is up. If I may briefly answer the question. That is true, but the argument here was not just that certain paragraphs were false. The argument was the affidavit's, the core segment of the affidavit that goes to criminal activity in itself was false, and I think that that was the legal error that the district court made. We'll hear from you, Ms. Ford. Good morning, your honors. May it please the court. My name is Laura Ford, and I'm here on behalf of the United States. I would briefly like to address footnote one in Green's reply brief suggesting that this court may consider all the field test reports that were included in addendum B of the opening brief. The problem with that suggestion is only one of the two June field test reports as part of the record, and that is the field test report with the June 19th date that was included on page 32 of the opening brief, and that's supported by page ID 384 of the suppression hearing where defense counsel is referring to the Narco Pouch 924 test, and that only applies to the June 19th test date, and also page ID 388 to 89, 393, and also the suppression hearing exhibit list on page ID 189 also supports that only that June 19th test form was included, and the government filed in a district court a notice for that exhibit, and we have a page ID number 404 to 1797, but that reflects that that exhibit was marked for trial as exhibit G2, and only that exhibit for the field test reports was admitted at trial. Noticeably absent is that June 20th test form, and that's significant because on page five of the reply brief, Green concedes that he didn't make this argument about varying drug quantity from the controlled buys below, and he certainly can't rely on a test form that isn't really part of the record. He can't move to expand the record under federal rule of appellate procedure 10E, because the purpose of that rule is to ensure that the record accurately reflects what was before the district court, not to present something new. But beyond trying to make an argument that was not raised below and relying on a test form that wasn't before the district court, his argument that the government is missing the point in denying that these controlled buys occurred is wrong. He has the burden of making a preliminary showing that there's a false statement in his affidavit, and he hasn't done that. The fact that the police used a form from another investigation as a template does not establish that a false statement is less true simply because you started out with a template, particularly where this affidavit has been tailored to the specific investigation with respect to the dates, the places, and the buys. And I think there's a critical distinction between the Pusey affidavit and this affidavit. In the Pusey case, you only had two controlled buys, and they occurred within the same month and actually within a week of each other. In this case, we have three controlled buys. And if you were simply making something up, why would you bother to include a controlled buy that occurred six months before the two most recent? His theory that the controlled buys did not happen just does not hold. In this case, it's pure speculation, and he was required to do more in order to obtain a Frank's hearing. There's absolutely nothing that is incorrect in this affidavit. With respect to... Again, even if the confidential informant was wrong about the drugs that were purchased on one occasion, it's not the confidential informant's veracity that matters in this case, it's the affiant's. And he hasn't shown that the affiant made a deliberate or false misstatement in this case. But he doesn't have to prove that... That's what the purpose of a Frank's hearing is. He just has to make some preliminary showing, right? Correct, but he didn't do that in this case. Even with respect to his allegation about using the wrong field test form for heroin, that still doesn't show that there was a false statement in this case. And in fact, the record reflects that the agent was quite surprised at trial and did not realize that he'd used the wrong test form until trial, and he admitted that it was a mistake. And that establishes that it's not a knowing falsehood, and it certainly wasn't material to the probable cause finding in this case, because the officer testified that the substance did test positive for cocaine, which is reflected on page ID 1519 to 22. But going back to the issue about the drug quantity, the government believes that that issue is not properly before this court. There's nothing to support that because the form that he's relying on isn't part of the record. But beyond that... Is this the idea of $20 was supposedly the informant's cost, no matter what the quantity of drugs he was getting? Sure. Yes, that it's not even properly before this court. But even beyond that, the state judge wasn't even relying on quantity in making the probable cause determination, as reflected on page ID 106. Drug quantity isn't even mentioned in the affidavit. The relevant point that the judge was looking at was whether there was probable cause to believe that there was crack being sold at this house, and that there were these two controlled buys in June, which refreshed that earlier controlled buy in December. But even if you omit that, you still have two controlled buys in this case, which established probable cause. And with respect to Green's neighbor's testimony, that was completely inconsequential in this case. It really did nothing to further his request to obtain a Frank's hearing, because both neighbors worked outside the home. They were admittedly absent from the home for periods of time, and neither of them were actively watching the house. And I think what's critical here is that the police actually were in a better position to observe the conditions at the house. And that's what makes this case distinguishable from the black decision that he's relying on. In that case, there was a suspected marijuana grow, and the officer said that they smelled the odor of marijuana from inside their vehicle. A neighbor subsequently presented an affidavit saying, well, I've been on this property and I've never smelled marijuana. And the court said on... It's on page three of that opinion, that the neighbor may be in a better position to observe the conditions, because he'd actually been on the property. Here we have the opposite, where the police are actually in a better position, because they are the ones that are actually watching the house. The neighbors weren't doing that in this case. I would suggest that if he presented a testimony of, I guess, a proverbial nosy neighbor, that would be one thing, but we don't have that in this case. There was absolutely nothing about their testimony that undercut or disproved the surveillance in this case and the controlled buys. And I guess going back to the controlled buys, he has to do more than simply deny that they occurred, given that we do have trial testimony in this case from two officers about that. Carter testified about the surveillance, the citizen complaints, the controlled buys and the field test at page ID 1042 and 1048 to 69, 1505 and beginning again at 1511. And Officer Bogowski also testified about December controlled buys at page ID 1091 to 95. And while Green has suggested on page 8, his reply brief, that that testimony was not before the district court when it was making the suppression determination. It's well established in this circuit that this court may consider trial testimony in affirming a district court's suppression determination, as stated in this court's decision in Hinojosa, which is found at 606 Fed Third 875, specifically page 880, and it's a 2006 circuit opinion. In short, Your Honors, there was absolutely nothing that was presented that warranted a Frank's hearing in this case, and the district court correctly denied a Frank's hearing. Unless this court has further questions, the government would respectfully request that this court affirm the district court's decision. Thank you, Your Honors. Your Honors, I'd like to make a few quick points in response to Ms. Ford's argument. Number one, talking about the field tests that were supposedly not part of the record, that's a disputed point, and I would submit that there's testimony in the suppression hearing, docket number 33, pages 73 to 74, discussing all four of the testing reports, and the one test coming positive for heroin, I would submit would make no sense out of the context of the other reports. The other reports were also discussed at trial. The suggestion that this affidavit was tailored from the Pusey affidavit, I think, is an overstatement at best when Officer Carter couldn't even be troubled to list his own police experience correctly. If he can't do that correctly, how much faith can we have that the rest of the case is correct, that there are three buys in this case versus the two in Pusey, I would submit that the most likely explanation for that is that the first buy in this case, coming six months beforehand, would have posed issues for a probable cause determination because it wasn't close enough in time to the issuance of the search warrant. So to make the affidavit more like the Pusey case, the police would most likely feel the need to add another buy. Now, important points on the Black case. The Black case wasn't just about the police saying they smelled marijuana and the neighbor saying he didn't. In the Black case, the police had conducted thermal imaging, they had observed the property, they had gotten complaints from the sheriff and from neighbors. There was a whole array of reasons that the police sought a search warrant. The neighbor's testimony didn't go to any of those other reasons. It went just to the one aspect of it, which is, I smell marijuana. And in this case, the property in Black was a huge property that the shed was a great distance from the house. The neighbors in this case were arguably much closer to Mr. Green's property than in Black. Now, aside from those minor points... They were gone for a lot of hours. They are, but there's no evidence that the neighbor in Black didn't have a job or that he was observing the house 24 hours a day either. If that was the standard, the neighbor's testimony would never be of any use for these Franks hearings. The neighbor, Mr. Mancha, testified that he was a smoker and that he was regularly outside of the house on his porch and that his windows were open to Mr. Green's house at all times. So I think if that's the standard, then we could never use neighbor testimony. To sum this up, though, I think that the government and the district court, with all respect, are missing the forest for the trees here. Because Mr. Green's argument all along has been, there was no confidential informant, there were no controlled purchases. So if the only way that Mr. Green can prove that for purposes of getting a Franks hearing is direct testimony from a confidential informant or from the police, then he's precluded as a matter of law from obtaining an evidentiary hearing under Franks because those sources are not available. That can't be what the Supreme Court intended in Franks and I would urge this court to vacate and remand for further proceedings. We appreciate your argument, both of you. Mr. Bergerthon, we note your appointed counsel under the Criminal Justice Act and we appreciate your taking the representation of Mr. Green in your advocacy on his behalf. Thank you. We'll consider the case carefully. Thank you.